1

2

3

4

5

6

7

8                              **UNITED STATES DISTRICT COURT**

9                              **EASTERN DISTRICT OF CALIFORNIA**

10

11   WILLIAM LAIL,                          )   Case No.: 1:20-cv-1349 JLT
                                            )
12               Plaintiff,                  )   ORDER GRANTING PLAINTIFF'S APPEAL
                                            )   (DOC. 15) AND REMANDING THE ACTION
13        v.                                 )   PURSUANT TO SENTENCE FOUR OF 42 U.S.C.
                                            )   § 405(g)
14   KILOLO KIJAKAZI,[1]                     )
     Acting Commissioner of Social Security, )   ORDER DIRECTING ENTRY OF JUDGMENT IN
15                                           )   FAVOR OF PLAINTIFF WILLIAM LAIL AND
                 Defendant.                  )   AGAINST DEFENDANT, KILOLO KIJAKAZI,
16                                           )   ACTING COMMISSIONER OF SOCIAL
                                            )   SECURITY
17   _____ )

18        William Lail asserts he is entitled to supplemental security income under Title XVI of the

19   Social Security Act.  Plaintiff argues the administrative law judge erred in evaluating the record and

20   seeks judicial review of the decision denying his application for benefits.  (*See generally* Doc. 15.)

21   For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to

22   sentence four of 42 U.S.C. § 405(g).

23                                      **BACKGROUND**

24        In February 2018, Plaintiff applied for benefits, alleging disability due to depression,

25   schizophrenia, and high blood pressure.  (Doc. 11-2 at 83-84.)  The Social Security Administration

26

27   _____

28        [1] This action was originally filed against Andrew Saul in his capacity as the Commissioner of Social Security.
     (Doc. 1 at 1.) The Court has substituted Kilolo Kijakazi, who has since been appointed the Acting Commissioner of Social
     Security, as the defendant. *See* Fed. R. Civ. P. 25(d).

                                              1

1  denied the application at the initial level and upon reconsideration.  (*See id.* at 114-118, 123-128.)

2  Plaintiff requested an administrative hearing regarding his applications and testified before an ALJ on

3  March 4, 2020.  (*Id.* at 24, 41.)  The ALJ found Plaintiff was not disabled and issued an order denying

4  benefits on April 21, 2020.  (*Id.* at 24-35.)  Plaintiff requested review of the decision by the Appeals

5  Council, which denied the request on August 3, 2020.  (*Id.* at 10-15.)  Therefore, the ALJ's

6  determination became the final decision of the Commissioner of Social Security.

7  **STANDARD OF REVIEW**

8          District courts have a limited scope of judicial review for disability claims after a decision by

9  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

10  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

11  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's

12  determination must be upheld by the Court if the proper legal standards were applied, and the findings

13  are supported by substantial evidence.  *Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510

14  (9th Cir. 1987).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as

15  a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

16  389, 401 (1971) (citation omitted).  The record as a whole must be considered, because "[t]he court

17  must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."

18  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

19  **DISABILITY BENEFITS**

20          To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to

21  engage in substantial gainful activity due to a medically determinable physical or mental impairment

22  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

23  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

24          his physical or mental impairment or impairments are of such severity that he is not
        only unable to do his previous work but cannot, considering his age, education, and

25          work experience, engage in any other kind of substantial gainful work which exists in
        the national economy, regardless of whether such work exists in the immediate area in

26          which he lives, or whether a specific job vacancy exists for him, or whether he would
        be hired if he applied for work.

27

28  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

2

1  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

2  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

3  gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

4  <u>**ADMINISTRATIVE DETERMINATION**</u>

5  To achieve uniform decisions, the Commissioner established a sequential five-step process for

6  evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process

7  requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had

8  medically determinable severe impairments (3) that met or equaled one of the listed impairments set

9  forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional

10  capacity to perform to past relevant work or (5) the ability to perform other work existing in significant

11  numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical

12  evidence. 20 C.F.R. §§ 404.1527, 416.927.

13  Pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial

14  gainful activity after the application date of February 7, 2018.  (Doc. 11-2 at 26.)  Second, the ALJ

15  found Plaintiff has the following severe impairments: depression with psychotic features,

16  schizoaffective disorder, and degenerative disc disease of the lumbar spine.  (*Id* at 27.)  At step three,

17  the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id*. at 27-29.)

18  Next, the ALJ found:

19  [T]he claimant has the residual functional capacity to perform medium work as
20  defined in 20 CFR 416.967(c) except he can perform work uncomplicated enough to
   be learned within thirty days; no hourly quotas/conveyor belts; no tandem tasks or
21  teamwork where one production step is dependent upon a prior step; and no more
   than occasional interaction with coworkers and supervisors and no interaction with
22  the general public.

23  (*Id*. at 29.)  With this residual functional capacity, the ALJ opined at step four that Plaintiff was "unable

24  to perform any past relevant work."  (*Id*. at 33.)  However, ALJ found Plaintiff could perform "jobs that

25  exist in significant numbers in the national economy."  (*Id*. at 34.)  Therefore, the ALJ concluded

26  Plaintiff was not disabled as defined by the Social Security Act from February 7, 2018, through the date

27  of the decision.  (*Id*. at 35.)

28  ///

3

1

## DISCUSSION AND ANALYSIS

2            Plaintiff argues that the ALJ erred relying on his own interpretation of the evidence after

3    rejecting each of the medical opinions in the record, which resulted in a duty to develop the record.

4    (Doc. 15 at 6-9.)  In addition, Plaintiff assert the ALJ erred in discounting the opinion of his "treating

5    mental health provider," a licensed social worker, who offered an opinion related to Plaintiff's "mental

6    health symptoms and resultant limitations."  (*Id.* at 9-11.)  On the other hand, the Commissioner

7    asserts the decision "is supported by substantial evidence and is in accordance with the law."  (Doc. 21

8    at 14; *see also id.* at 4-14.)

9    **A.      The Residual Functional Capacity**

10           A claimant's RFC is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§

11   404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an

12   RFC as the "maximum degree to which the individual retains the capacity for sustained performance

13   of the physical-mental requirements of jobs").  In formulating an RFC, the ALJ weighs medical and

14   other source opinions.  *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir.

15   2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments,"

16   whether severe or not, when assessing an RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

17           1.       Statement and opinions from Ms. Sosa

18           Plaintiff contends the ALJ erred in rejecting the limitations identified by Naomi Sosa, a licensed

19   clinical social worker at Clinica Sierra Vista.[2]  (Doc. 15 at 9-11.)  Ms. Sosa completed a medical report,

20   which the administration dated December 6, 2019.  (Doc. 11-2 at 4, 498-510.)

21           Ms. Sosa noted Plaintiff had "been seen by clinicians at Clinica Sierra Vista in Fresno, CA for

22   mental disorders for almost ten years," and his record included a history of depressive disorder and

23   auditory hallucinations.  (Doc. 11-2. at 503-504.)  Plaintiff told Ms. Sosa that his depression was an "8"

24   on a 10-point scale, with 10 being the most depressed he could imagine.  (*Id.* at 504.)  In addition, he

25

26   _____

27        [2] The Commissioner asserts that "the record does not appear to contain any treatment notes from Ms. Sosa."
(Doc. 21 at 13.)  However, the treatment record indicates that Ms. Sosa first saw Plaintiff for individual counseling on
September 3, 2019, at which time she indicated Plaintiff exhibited depressive cognition, including "anxiety and depressive
28   negative thoughts."  (Doc. 11-2 at 560.)  Several other treatment notes from Clinica Sierra Vista indicate Ms. Sosa
evaluated Plaintiff and signed the progress notes prior to authoring her statement.  (*See, e.g.*, 545, 554-56, 558.)  Thus, the
record does not support the Commissioner's assertion.

described anxiety and "a general sense of worry," and panic around other people.  (*Id.* at 504-505.)  Ms. Sosa noted that Plaintiff described a level of anxiety "so severe that his social interactions are extremely limited and he has difficulty engaging in daily activities."  (*Id.* at 509.)  At the time of Ms. Sosa prepared the statement, Plaintiff had been diagnosed with schizoaffective disorder and he was taking olanzepine, perpheazine, Zoloft, and Zyprexa for his mental impairments.  (*Id.* at 503, 509.)  Plaintiff reported "his medication [had] improved his temper considerably."  (*Id.* at 505.)

Ms. Sosa observed that Plaintiff "came to his appointments with [her] appropriately dressed, although his clothes generally appeared wrinkled and stained."  (Doc. 11-2 at 498.)  She also noted Plaintiff had unkempt hair, "his nails appeared to be unclipped and dirty," and he "presented a flat effect."  (*Id.*)  Ms. Sosa indicated: "Mr. Lail was cooperative at all interviews, but had poor eye contact and would sometimes have difficulty expressing himself.  When speaking, he tended to look down between his knees or over the interviewer's right shoulder. … There was little inflection in his manner of speaking.  (*Id.* at 498-99.)  In addition, Ms. Sosa observed that when talking to Plaintiff, "he needed frequent reminders of the topic of conversation in order to proceed."  (*Id.* at 507.)  Ms. Sosa indicated that she evaluated Plaintiff's ability to concentrate, persist, and maintain pace with asking him to count backwards by 7s, and Plaintiff "got the first number correct and then failed afterward."  (*Id.* at 508.)

Ms. Sosa opined that Plaintiff's "[c]ognitive impairment makes it difficult for him to comprehend multi-step instructions."  (Doc. 11-2 at 509.)  She also believed Plaintiff exhibited an "inability to maintain pace," which she noted caused Plaintiff's "work performance [to be] considered unsatisfactory by his previous employers."  (*Id.*)  Ms. Sosa opined that Plaintiff's "[d]eficiencies in memory, focus, and cognitive function make it unlikely that he can be trained, take direction, or benefit from correction."  (*Id.*)  Ms. Sosa believed Plaintiff was "not able to work."  (*Id.*)  She also indicated that Plaintiff's anxiety had worsened, which made "it likely that he would have poor work attendance even if he were to be hired."  (*Id.* at 509-10.)

a.      Standards for evaluation

An ALJ must consider the opinions of sources who are not physicians—such as social workers— who may offer "judgment about some of the same issues addressed in medical opinions

from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1); *see also Voong v. Astrue*, 641 F. Supp.

2d 996, 1001, n.2 (E.D. Cal. 2009) (observing that "social workers are considered 'other sources'").

Opinions of such "other sources" "may be discounted [if] the ALJ provides reasons germane to each

source." *Fields v. Comm'r of Soc. Sec.*, 2019 WL 3003992 at *3 (E.D. Cal. July 10, 2019) (citing

*Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017)); *see also Molina v. Astrue*, 674 F.3d 1104, 1111

(9th Cir. 2012) (opinions from other sources may be rejected with germane reasons).  Thus, because

Ms. Sosa was a social worker, the ALJ could only reject the opinions of Ms. Sosa by providing

germane reasons.

<u>b.      ALJ's analysis of the opinion</u>

The ALJ observed that Ms. Sosa completed a statement that Plaintiff was "unable to work due

to symptoms related to his mental impairments."  (Doc. 11-2 at 33.)  The ALJ stated:

> The undersigned finds that this is unpersuasive as it does not contain an opinion
> regarding the claimant's functional abilities and limitations; lacks sufficient work-
> related functional limitations; is inconsistent with the treatment records showing
> largely only minimal symptoms and improvement with treatment and medication; is
> not consistent with the claimant['s] activities of daily living, including, performance
> of personal care activities with no problems, preparing meals, doing some household
> chores and yard work, and going shopping; and an opinion that an individual is
> disabled or is unable to work is an opinion on the ultimate issue of disability, which is
> an issue that is reserved to the Commissioner of the Social Security Administration
> (20 CFR 416.927(d)), and the Social Security Administration uses a different
> definition of disability.

(*Id.*)  Plaintiff asserts these reasons were supported by the record and were not legally sufficient to

reject limitations identified by Ms. Sosa.  (Doc. 15 at 9-11.)

*i.      Opinion regarding functional abilities and limitations*

As noted above, the ALJ rejected the statement completed by Ms. Sosa, in part, because she

did not address Plaintiff's functional abilities and limitations or address work-related functional

limitations.  (Doc. 11-2 at 33.)  However, this conclusion is not supported by the record, as Ms. Sosa

indicated Plaintiff would have difficulty with "comprehend[ing] multi-step instructions" and exhibited

an "inability to maintain pace."  (*Id.* at 509.)  Ms. Sosa also opined that it was "unlikely that [Plaintiff]

can be trained, take direction, or benefit from correction."  (*Id.*)  Such findings regarding the ability to

understand and remember tasks and maintain pace are functional limitations to be considered by an

ALJ.  *See* 20 C.F.R. § 416.920a(c)(3) (functional limitation is assessed with the factors such as the

1    ability to understand, remember, or apply information; ability to concentrate, persist, or maintain

2    pace); *see also Celia C. v. Berryhill*, 2018 WL 6524281 at *4 (C.D. Cal. Dec. 12, 2018) (indicating the

3    physician identified a "functional limitation" in concluding the claimant was "moderately limited at

4    understanding, remembering, and executing simple, 1-or-2 step instructions").

5         Furthermore, Ms. Sosa indicated Plaintiff was likely to "have poor work attendance" due to his

6    anxiety (Doc. 11-2 at 509-510), and attendance is a "work-related functional ability." *Henderson v.*

7    *Berryhill*, 2017 WL 3399998 at *3 (C.D. Cal. Aug. 8, 2017); *see also Ryan v. Comm'r of Soc. Sec.*,

8    528 F.3d 1194, 1196 (9th Cir. 2008) (indicating a physician gave a "functional assessment" when

9    concluding the claimant "would not be able to maintain regular attendance in the work place due to

10   extreme anxiety and continuing depression").  Thus, the ALJ erred in finding Ms. Sosa did not offer

11   any opinions regarding Plaintiff's functional limitations and abilities, and this was not a germane

12   reason for rejecting her statement and the opinions therein.

13                    *ii.    Inconsistency with treatment records*

14        Although the ALJ purported to reject the opinions from Ms. Sosa as "inconsistent with the

15   treatment records," the ALJ did not identify the specific opinions or limitations that he rejected or cite

16   the treatment notes he believed showed the inconsistency.  The Court is unable to speculate as to the

17   specific inconsistencies the ALJ found between the statement from Ms. Sosa and Plaintiff's treatment

18   records.  *See, e.g., Solomon v. Comm'r of Soc. Sec.,* 2018 WL 6419672 at *10 (E.D. Cal. Dec. 6, 2018)

19   (the ALJ did not provide a germane reason for rejecting a function report because he failed to identify

20   specific statements that were rejected and the portions of the record that demonstrated an overstatement

21   of the claimant's limitations); *Young v. Saul*, 2020 WL 3506805 at *25 (N.D. Cal. June 29, 2020)

22   (finding the ALJ erred in rejecting a statement where "the ALJ did not identify any particular testimony

23   that he discounted" and "did not cite which treatment records were inconsistent with specific portions

24   of [the witness'] testimony").

25        Due to the failure to specify which of Ms. Sosa's opinions and limitations were rejected and the

26   failure to explain how the record was inconsistent with the opinions from Ms. Sosa, the purported

27   inconsistencies do not support the ALJ's decision. *See Solomon,* 2018 WL 6419672 at *10; *see also*

28   *Mendez v. Colvin*, 2014 WL 4793597 at *6-7 (D.Az. Sept. 25, 2014) (concluding the ALJ erred in

rejecting statements "because of their inconsistency with the objective medical record" because the ALJ did not identify which statements were not given any weight).

### iii.   Plaintiff's activities of daily living

The Ninth Circuit determined an ALJ may reject an opinion from an "other source" or lay witness when the restrictions identified appear to be inconsistent with the claimant's level of activity. *See Valentine v. Comm'r of SSA*, 574 F.3d 685, 694 (9th Cir. 2009); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (inconsistency with a claimant's activities a germane reason); *see also Dodd v. Berryhill,* 708 F. App'x 452, 453 (9th Cir. 2018) (finding an ALJ did not err in giving "minimal weight" to the opinions of a social worker and a mental health counselor due to conflicts between their opinions and the plaintiff's reported activities).

Notably, however, the Ninth Circuit found an ALJ did not identify a germane reason for rejecting the opinion of nurse practitioner—also an "other source" under the Regulations—when the claimant engaged in limited activities. *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017).  In *Popa*, the ALJ noted the claimant attended church, shopped for groceries, and watched television.  *Id.* at 906.  The Court found these activities "were not consistent with regularly attending a full-time job." *Id*.  Thus, the Court determined Popa's level of activity was not a germane reason for rejecting the limitations identified by the nurse practitioner. *Id.* at 907.

The ALJ indicated the statement from Ms. Sosa was inconsistent with Plaintiff's "activities of daily living," which included "performance of personal care activities with no problems, preparing meals, doing some household chores and yardwork, and going shopping."  (Doc. 11-2 at 33; *see also id.* at 28.)  However, the ALJ did not acknowledge the reported difficulty Plaintiff had with the activities.  For example, Plaintiff reported he would shop for food when he expected "few other shoppers," and there were "times when he felt so overwhelmed while waiting in line at the register that he left the store abruptly, abandoning the items that he had intended to purchase."  (*Id.* at 505.)  In addition, though the ALJ indicated Plaintiff had "no problems" with personal care, the ALJ also failed to address the fact that Ms. Sosa observed that Plaintiff had "poor dentition," unkempt hair, dirty and unclipped nails, and his "clothes generally appeared wrinkled and stained."  (*Id.* at 498, 560.)  Finally, the ALJ did not explain how the activities identified conflicted with any limitations identified by Ms.

Sosa.  Consequently, the Court is unable to find Plaintiff's daily activities were a germane reason to reject the statement.  *See Mary M. v. Comm'r of Soc. Sec.*, 2020 WL 634428 at *5 (W.D. Wash. Feb. 11, 2020) (finding "Plaintiff's activities were not a germane reason to discount…statements" when the ALJ did not explain how the identified activities contradicted with the statements").

                    *iv.    Opinion on the ultimate issue*

        The ALJ observed that "an opinion that an individual is disabled or is unable to work is an opinion on the ultimate issue of disability, which is an issue that is reserved to the Commissioner of the Social Security Administration."  (Doc. 11-2 at 33.)  As the ALJ noted, "[t]he law reserves the disability determination to the Commissioner" and such opinions are not given weight.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *see also Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work… is an opinion about an issue reserved to the Commissioner").  Thus, the ALJ was entitled to reject the conclusion of Ms. Sosa that Plaintiff was "not able to work."  (*See* Doc. 11-2 at 509.)

        Importantly, an ALJ may not reject work-related limitations simply on the grounds that a source also addressed the ultimate issue.  As this Court previously explained, "<u>*To be very clear*</u>, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not be conflated."  *Neves v. Comm'r of Social Security*, 2017 WL 1079754 at *6 (E.D. Cal. Mar. 21, 2017) (emphasis in original).  Therefore, the ALJ erred in rejecting the functional limitations identified by Ms. Sosa on these grounds.

                    c.      Conclusion

        The ALJ failed to address the functional limitations identified by Ms. Sosa in her statement and did not identify germane reasons for rejecting these limitations.  As a result, the ALJ erred in addressing the statement from Ms. Sosa.

            2.      Rejection of all medical opinions

        Plaintiff asserts the ALJ erred in formulating an RFC without pointing to "evidence from a medical professional which supports [the] assessment."  (Doc. 15 at 6.)  Plaintiff observes that "[t]he record in this case contained three opinions from non-examining medical sources and two opinions from examining medical sources," and "[t]he ALJ rejected all these opinions."  (*Id.* at 7.)  Thus,

Plaintiff asserts the RFC is "unsupported by substantial evidence, because it is based on nothing more than the ALJ's own lay interpretation of the records and speculation," and the ALJ should have obtained further medical evidence.  (*Id.* at 7-8.)  The Commissioner acknowledges the ALJ imposed different physical and mental limitations in the RFC than any physicians identified.  (*See* Doc. 21 at 7-8.)  However, the Commissioner asserts the ALJ fulfilled the investigative duty and was not required to "parrot a … opinion from a treating examining source to substantially support his finding."  (*See id.* at 4, 7-10.)

> ### a.      Mental limitations

Dr. Mary Lewis performed a consultative examination on April 21, 2018.  (Doc. 11-2 at 435.)  Plaintiff reported being diagnosed with schizophrenia two years before, and said he heard female voices in his head "once a week."  (*Id.*)  In addition, he told Dr. Lewis that he had therapy and took medication, which he believed helped.  (*Id.*)  Plaintiff reported he "sometimes" did chores, such as mowing the yard and raking leaves.  (*Id.* at 438.)  Dr. Lewis observed that Plaintiff had good eye contact and "his facial expressions [were] appropriate for the topics of discussion."  (*Id.* at 436.)  She tested Plaintiff's learning and memory and found Plaintiff could recall three digits forward and backward, and he was able to recall three items after five minutes.  (*Id.* at 437-438.)  Dr. Lewis also evaluated Plaintiff's attention and concentration by asking him to "count by 2s to 20 and back to zero," and complete a three-step command.  (*Id.* at 438.)

Dr. Lewis concluded Plaintiff's ability to perform any tasks—whether simple or detailed and complex—was "unimpaired."  (Doc. 11-2 at 438.)  She opined Plaintiff did not have any impairments with accepting instructions, interacting with coworkers and the public, or "perform[ing] work activities on a consistent basis without special or additional instruction."  (*Id.*)  Finally, Dr. Lewis concluded Plaintiff was "mildly impaired" with the ability "to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition" and "to deal with the unusual stress encountered in the workplace."  (*Id.* at 439.) The ALJ found the opinion of Dr. Lewis was "partially persuasive."  (Doc. 11-2 at 32.)  The ALJ indicated he "agree[d] that there are few mental limitations," but rejected the conclusion that Plaintiff had "no to mild impairments."  (*Id.*)  Instead, the ALJ found "examination findings and the claimant's reported symptoms and functional limitations"

supported a conclusion that "mild to moderate limitations" were appropriate.  (*Id.*)

Similarly, the ALJ rejected the opinions of the non-examining physicians.  (Doc. 11-2 at 32.) Drs. Haaland, Murillo and Caruso-Radin reviewed available records—including the findings from the consultative examination— and opined Plaintiff had "nonsevere depressive, bipoloar, and related disorders and schizophrenia spectrum and related psychotic disorders, causing no to mild limitations, and no severe physical medically determinable impairments."  (Doc. 11-2 at 32; *see also id.* at 88-90, 101-103.)  The ALJ concluded "these opinions are not persuasive, as they are not well supported and consistent with the treatment records," and were "generally not consistent with the medical evidence as a whole."  (*Id.*)

As Plaintiff observes, the ALJ rejected all medical opinions in the record prior to determining Plaintiff's RFC, in which the ALJ determined Plaintiff "can perform work uncomplicated enough to be learned within thirty days; no hourly quotas/conveyor belts; no tandem tasks or teamwork where one production step is dependent upon a prior step; and no more than occasional interaction with coworkers and supervisors and no interaction with the general public."  (Doc. 11-2 at 29.)  However, it is unclear how, or why, the ALJ determined these mental functional limitations were appropriate. Importantly, it is well-settled law that an ALJ may not render his own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings").

"When an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb.1, 2011). Consequently, courts found an ALJ erred where all medical opinions were rejected before the ALJ formulated the RFC.  *See, e.g., Perez v. Comm'r of Soc. Sec*., 2018 WL 721399 (E.D. Cal. Feb. 6, 2018); *Ceja v. Colvin*, 2013 WL 5492046 at *8 (C.D. Cal. Sept. 30, 2013) (finding the ALJ's decision was not supported by substantial evidence where the ALJ rejected the identified limitations and it was "not entirely clear upon whose medical opinion(s) the ALJ relied").

In *Perez*, a physician concluded after a consultative examination that the claimant "had no functional restrictions", and two non-examining physicians opined the claimant "had no severe physical impairments." *Id.*, 2018 WL 721399 at *6. The ALJ "gave no weight" to these opinions, finding the record indicated the claimant had some limitations. *Id.* "After rejecting all the doctor's opinions, the ALJ concluded that Plaintiff would be capable of a reduced range of light work with postural manipulative and environmental restrictions." *Id.* The Court found the ALJ erred, explaining:

> A claimant's residual functional capacity is not a medical opinion, but is an issue to be decided by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, the finding must be supported by substantial evidence in the record and the ALJ must explain his reasoning behind the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c, 416.920c.
>
> Here, the ALJ stated that the RFC was supported by the weight of the objective evidence and Plaintiff's less than credible testimony. But the Court is unable to determine how the ALJ arrived at the conclusion that Plaintiff was capable of light work. Absent adequate explanation of the record, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined his own limitations for Plaintiff. The Court finds that this was error. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person,... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

*Id.*, 2018 WL 721399 at *7-8. Without the support of a physician's opinion, the Court concluded the RFC lacked the support of substantial evidence. *Id.* at *8.

As in *Perez*, several physicians opined Plaintiff had no severe mental limitations. However, the ALJ—who was also the only one who reviewed Plaintiff's mental health treatment notes from Clinica Sierra Vista— identified limitations that included with learning work; performing quotas; and interacting with coworkers, supervisors, and the public. (*See* Doc. 11-2 at 29.) Without physicians' opinions to support the ALJ's conclusions, the Court is unable to find substantial evidence supports the mental RFC determination. *See Perez*, 2018 WL 721399 at *7-8; *Ceja*, 2013 WL 5492046 at *8; *see also Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" if an RFC is formulated without the findings of a physician).

b.      Physical limitations

Dr. Samuel Rush performed a consultative internal medicine evaluation on April 23, 2018. (Doc. 11-2 at 442.)  Plaintiff told Dr. Rush that he "had back problems since 1993," including "intermittent pain in his lower back with frequent bending and lifting."  (*Id.*)  Dr. Rush found Plaintiff did not exhibit any tenderness over his spine and his straight leg raise tests were negative.  (*Id.* at 444.) Dr. Rush determined Plaintiff's range of motion was "within normal limits" in his spine, hips, knees, ankles, and feet.  (*Id.*)  He also found Plaintiff's motor strength was "5/5" in his arms and legs, and the sensory exam was normal.  (*Id.*)  Dr. Rush opined Plaintiff had a "[l]ow back syndrome," which sounded like "a chronic strain possible disc disorder, but the pain is non-radiating."  (*Id.*)  Dr. Rush concluded Plaintiff did not have any restrictions with lifting, postural activities, or use of his hands. (*Id.* at 445.)  Dr. Haaland reviewed the findings of Dr. Rush and also concluded Plaintiff had "[n]o limitations" on April 30, 2018.  (*Id.* at 89.)

The ALJ found the opinion of Dr. Rush was "generally persuasive because Dr. Rush conducted an in-person examination, referenced specific findings on exam, and his findings were generally supported by the examination findings and were generally consistent with the evidence in the record." (Doc. 11-2 at 32.)  However, the ALJ indicated he "determined the claimant's residual functional capacity to be a reduced range of medium exertion, specifically as set forth above, which the undersigned finds is slightly more consistent with the lumbar spine imaging and some examination findings of pain with range of motion and tenderness."  (*Id.*)  The ALJ also found Dr. Haaland's opinion that Plaintiff had "no severe physically medically determinable impairments" was "not persuasive."  (*Id.*)

Again, the ALJ rejected—at least in part— the only medical opinions in the record related to Plaintiff's physical impairments.  It appears the ALJ alone reviewed the lumbar spine imaging that showed degenerative changes, as the imagining results were dated August 16, 2018—which was after Drs. Rush and Haaland offered their opinions—and no physician offered an opinion on this evidence. (*See* Doc. 11-2 at 31, citing Exh. 9F/20 [Doc. 11-2 at 471].)  In addition, it appears the ALJ also was the only one to review the treatment notes indicated Plaintiff exhibited "tenderness and moderate pain with range of motion."  (*Id.*)  Because the ALJ alone reviewed this evidence, it is clear he rendered his

13

own medical findings that Plaintiff could perform medium work without postural limitations.  The Court is unable to find substantial evidence in the record supports these findings.  *See Tackett*, 180 F.3d at 1102-03; *Banks*, 434 F. Supp. 2d at 805.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify germane reasons for rejecting the limitations identified by Ms. Sosa. In addition, the RFC articulated by the ALJ lacks the support of substantial evidence in the record, and the matter should be remanded for further consideration. *See Tackett*, 180 F.3d at 1102-03 (remanding the matter to the Social Security Administration for reconsideration after finding the ALJ erred by offering conclusions not supported by any medical evidence); *Perez*, 958 F.2d at 446 (finding that where the ALJ offered an opinion without the support of an "assessment of residual functional capacity by a physician, ... it is necessary to remand for the taking of further functional evidence").

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating opinions in the record and failed to apply the proper legal standards.  Because the decision is not supported by substantial evidence, the administrative decision denying benefits cannot be upheld.  *See Sanchez*, 812 F.2d at 510. ///

14

Accordingly, the Court **ORDERS**:

1.     Plaintiff's appeal of the ALJ's decision (Doc. 15) is **GRANTED**;

2.     The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.     The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff William Lail and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **October 8, 2021**                          _ **/s/ Jennifer L. Thurston**
                                                           CHIEF UNITED STATES MAGISTRATE JUDGE